**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| **KYLIA SNIDER,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **CAUSE NO. 1:26-cv-216** |
| | § | |
| **RES-CARE, INC. AND EDUCARE COMMUNITY LIVING CORPORATION - TEXAS,** | § | |
| | § | |
| | § | |
| | § | |
| **DEFENDANT.** | § | **JURY DEMANDED** |

# PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

**Plaintiff Kylia Snider ("Plaintiff" or "Mrs. Snider")** files this Complaint and would respectfully show the Court as follows:

## NATURE OF THE CASE

1. This is a sex and pregnancy discrimination case. **Defendants RES-CARE, INC. and EduCare Community Living Corporation (sometimes collectively "Defendants")** maintain a work environment that is hostile to women, and in particular, women who are nursing. EduCare failed to provide Mrs. Snider with an adequate private space to express breast milk, subjected her to harassment and derogatory comments about her nursing, and constructively discharged her.

## PARTIES

2. Plaintiff is an individual who currently resides in Taylor County, Texas.

3. Defendant RES-CARE, INC. dba BrightSpring and/or BrightSpring Health Services. is a foreign for-profit corporation with its principal place of business in Louisville, Kentucky. RES-CARE does business in Texas and may be served through its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701, or wherever it may be found.

4. Defendant EduCare Community Living Corporation - Texas is a domestic for-profit corporation doing business in Texas and may be served through its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701, or wherever it may be found.

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has federal question jurisdiction because the action arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-5(f)(3), including the Pregnancy Discrimination Act (PDA), as amended, 42 U.S.C. § 2000e(k); the Pregnant Workers Fairness Act (PWFA), 42 U.S.C. § 2000gg-2(a)(1); and the Providing Urgent Maternal Protections for Nursing Mothers Act (PUMP Act), an amendment to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(r).

6. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims which are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

7. Venue is proper in the U.S. District Court for the Northern District of Texas pursuant to 42 U.S.C. § 1391(b) because the unlawful practices alleged below were committed therein.

## FACTS

RES-CARE and EduCare operate assisted living facilities throughout the U.S., including Abilene, Texas.

8. RES-CARE is publicly traded on NASDAQ under the symbol BTSG. It is a conglomerate providing home and community-based healthcare services, focused on delivering complementary pharmacy and provider services to complex patients. RES-CARE has a differentiated approach to care delivery, with an integrated and scaled model that addresses critical services that the highest-need and highest-cost patients require. With a focus on Senior and Specialty patients, which includes Behavioral populations, their platform provides pharmacy and provider services (both clinical and supportive care in nature) in lower-cost home and community settings largely to Medicare, Medicaid, and commercially-insured populations.

9. RES-CARE is the parent company of EduCare.

10. RES-CARE and EduCare operate as a single integrated employer. Specifically, there is an interrelation of operations between RES-CARE and EduCare, such as shared HR, payroll, facilities, and equipment. There is common management between the two entities (overlapping managers or officers). There is centralized control of labor relations. There is common ownership or financial control between the two entities.

11. EduCare provides support to adults and children who need assistance with daily living due to a developmental, cognitive, or intellectual disability, and operates community living facilities across Texas, including the ResCare Community Living Center in Abilene, Texas.

12. In early March 2024, EduCare hires Mrs. Snider as an Office Coordinator at its facility in Abilene, Texas. All of the onboarding documents and HR policies refer to RES-CARE or BrightSpring.

Mrs. Snider discloses her need to pump before she is hired.

13. Mrs. Snider has recently given birth and is nursing her baby. Before accepting the position, Mrs. Snider advises HR Generalist Lisa Hernandez that she had recently given birth and needs a private place to express breast milk during the workday. Hernandez tells Mrs. Snider that EduCare can accommodate her request.

14. As an initial accommodation, Mrs. Snider is allowed to complete training from home before her first day in the office.

Mrs. Snider is told to go to her car on her first day.

15. On March 11, 2024, Mrs. Snider reports to the office for the first time. She immediately goes to Program Manager Tasha Yager and tells her she needs a private space to pump. Yager tells her she can use the training room or conference room, but that someone is always in both. Yager then tells Mrs. Snider to "just go to your car."

16. The parking lot is not private. Most of the employees from the office go outside to smoke in view of the parking lot.

17. With no adequate private space available, Mrs. Snider is forced to pump at her desk with a male coworker nearby – approximately three times a day.

Kiesha harasses Mrs. Snider about breastfeeding.

18. Throughout Mrs. Snider's employment, Area Supervisor Keisha Matthews subjects Mrs. Snider to a pattern of harassment about her breastfeeding. Matthews tells Mrs. Snider that she is "sick and disgusting" for wanting to breastfeed her baby and that it is a "sick pleasure." Matthews also gives Mrs. Snider a derogatory nickname in front of other employees: "Pumper."

19. Mrs. Snider is humiliated and distressed by this treatment.

Mrs. Snider is forced to pump in front of a male client.

20. On April 24, 2024, Mrs. Snider is required to transport a male client to an offsite appointment. Because she has no private space, Mrs. Snider is forced to pump in front of the male client.

Mrs. Snider complains to HR.

21. On April 26, 2024, Mrs. Snider meets with HR Generalist Hernandez and complains that she is not being given an adequate private space to pump, that she had been forced to pump in front of a male coworker three times a day, and that she has been forced to pump in front of a male client. Mrs. Snider also brings information about the Providing Urgent Maternal Protections for Nursing Mothers Act (PUMP Act) and presents it to Yager, who said she would "take a look at it." At a previous employer, Mrs. Snider had been forced to pump in her car for one of her previous children, and she was aware of the passage of the PUMP Act.

22. EduCare takes no corrective action.

Matthews forces Mrs. Snider to forgo pumping – and then mocks her.

23. On May 1, 2024 – just five days after Mrs. Snider's HR complaint – Keisha Matthews sends Mrs. Snider a text message before work hours directing her to take a male client to an offsite appointment before 8:15 AM. Mrs. Snider tells Mathews that this is not part of her job description and that it will interfere with her pumping schedule. Matthews responds, "make that baby someone else's fucking problem," and tells Mrs. Snider she has no choice.

24. Mrs. Snider takes the client to the appointment. The appointment lasts approximately five hours. Because she cannot pump during the appointment, Mrs. Snider leaks through her shirt and onto her pants and returns to the office visibly soaked.

25. When Mrs. Snider returns, Area Manager Keisha Matthews comments in front of a male coworker: "Damn, your tits look huge." Program Manager Tasha Yager joins in and says: "They be looking huge." Both women then walk out of the room.

26. Mrs. Snider is devastated. She clocks out, goes home, and writes her resignation letter. She resigns the next day, May 2, 2024, citing "ongoing harassment in the workplace".

27. EduCare does not respond to Mrs. Snider's resignation email. More than a week later, HR Generalist Hernandez leaves Mrs. Snider a voicemail requesting a written description of the harassment. No follow up or corrective action was ever taken.

## WORKPLACE SAFETY RULES

28. Employers must maintain a workplace that is free of harassment and discrimination, including harassment based on sex and an employee's decision to breastfeed.

29. Employers must provide nursing employees with a private space, other than a bathroom, to express breast milk during the workday.

30. Employers must provide pregnant and nursing employees with the same accommodations provided to other employees.

31. Employers must not allow such a hostile work environment that an employee feels compelled to resign.

## FIRST CAUSE OF ACTION – THE PUMP ACT

32. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

33. The Providing Urgent Maternal Protections for Nursing Mothers Act (PUMP Act) amended the Fair Labor Standards Act (FLSA) to require employers to provide nursing employees with (1) reasonable break time to express breast milk for up to one year after the child's birth, and

(2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public. 29 U.S.C. § 207(r).

34. Plaintiff is an employee within the meaning of the FLSA and the PUMP Act.

35. Defendant is an employer within the meaning of the FLSA and the PUMP Act.

36. At all relevant times, Mrs. Snider had recently given birth and was nursing her baby and was therefore entitled to the protections of the PUMP Act.

37. Defendant violated the PUMP Act by failing to provide Mrs. Snider with a place to express breast milk that was shielded from view and free from intrusion. Defendant's violations include but are not limited to: directing Mrs. Snider to pump in her car in a non-private public parking lot frequented by employees; requiring Mrs. Snider to pump at her desk in the presence of a male coworker approximately three times a day; requiring Mrs. Snider to transport a male client to a five-hour offsite appointment on May 1, 2024, despite her notification that the assignment would prevent her from pumping; and failing to provide any adequate private space throughout the duration of her employment, from March 2024 through her constructive discharge on May 2, 2024.

38. Mrs. Snider presented PUMP Act literature to Program Manager Tasha Yager on April 26, 2024. Defendant nonetheless took no corrective action.

39. As a direct and proximate result of Defendant's violations of the PUMP Act, Plaintiff suffered damages, including physical discomfort, lost compensatory time, and harm to her ability to nurse. Defendant's violations were willful.

## SECOND CAUSE OF ACTION – TITLE VII – SEX DISCRIMINATION

40. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is female. *See* 42 U.S.C. § 2000e-5(f).

41. Defendant is an employer within the meaning of Title VII. *See* 42 U.S.C. § 2000e(b).

42. Defendant intentionally discriminated against Plaintiff with respect to the terms and conditions of her employment by subjecting her to a hostile work environment because she is female. This discrimination included but is not limited to subjecting Mrs. Snider to repeated derogatory and offensive comments about her decision to breastfeed, calling her "sick and disgusting," assigning her the degrading nickname ("pumper"), making vulgar comments about her breasts in front of male coworkers, and constructively discharging Plaintiff because of her sex.

43. A reasonable person would have resigned under the same or similar circumstances.

44. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages. Defendant's conduct was willful and justifies an award of punitive damages.

<u>THIRD CAUSE OF ACTION – TITLE VII & PDA – PREGNANCY DISCRIMINATION</u>

45. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

46. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she was pregnant and had recently given birth and was nursing. See 42 U.S.C. § 2000e(k).

47. Defendant is an employer within the meaning of Title VII. See 42 U.S.C. § 2000e(b).

48. Defendant intentionally discriminated against Plaintiff by subjecting her to a hostile work environment and constructively discharging her because of or on the basis of her pregnancy and related medical condition of lactation. Defendant's actions include but are not limited to failing to provide Mrs. Snider with an adequate private space to express breast milk; directing her

to pump in her car; forcing her to pump at her desk in front of a male coworker three times a day; forcing her to pump in front of a male client; subjecting her to derogatory comments about her nursing; assigning her a degrading nickname ("pumper"); requiring her to forgo pumping during a five-hour client appointment; and making vulgar comments about her body when she returned soaked.

49. A reasonable person would have resigned under the same or similar circumstances.

50. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages. Defendant's conduct was willful and justifies an award of punitive damages.

FOURTH CAUSE OF ACTION – PFWA – FAILURE TO ACCOMMODATE

51. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

52. Plaintiff is an employee within the meaning of the Pregnant Workers Fairness Act (PWFA), 42 U.S.C. § 2000gg(3)(A), which incorporates the definition in Title VII, 42 U.S.C. § 2000e(f).

53. Defendant is a covered entity within the meaning of the PWFA, 42 U.S.C. § 2000gg(2).

54. Defendant intentionally discriminated against Plaintiff in violation of 42 U.S.C. § 2000gg-1(1), (3), (4), and (5) by failing to make reasonable accommodation to the known limitations related to Plaintiff's pregnancy and related medical conditions, including lactation, and by denying Plaintiff employment opportunities based on the need to make reasonable accommodations, including but not limited to:

a. Failing to provide Mrs. Snider with an adequate private space to express breast milk, despite her pre-hire disclosure of the need and her repeated subsequent requests;

b. Directing Mrs. Snider to pump in her car in a non-private, public parking lot;

c. Requiring Mrs. Snider to pump at her desk in front of a male coworker approximately three times a day;

d. Failing to participate in the interactive process to determine what, if any, reasonable accommodation would be needed.

55. Defendant interfered with Mrs. Snider's statutory right to be free of coercion, intimidation, and threats in exercising her rights under the PWFA in violation of 42 U.S.C. § 2000gg-1(f)(2).

56. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages. Defendant's conduct was willful and justifies an award of punitive damages.

## FIFTH CAUSE OF ACTION – RETALIATION

57. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

58. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is female. *See* 42 U.S.C. § 2000e-5(f).

59. Defendant is an employer within the meaning of Title VII. *See* 42 U.S.C. § 2000e(b).

60. Plaintiff engaged in protected activity by (1) making a discrimination complaint to HR Generalist Lisa Hernandez on April 26, 2024 about the lack of adequate pumping space and ongoing harassment about her breastfeeding; (2) presenting PUMP Act literature to Program

Manager Tasha Yager regarding Plaintiff's protected rights; and (3) objecting to Area Manager Keisha Matthews's harassment on multiple occasions throughout her employment. Plaintiff suffered materially adverse employment actions when, five days after her HR complaint, she was compelled to forgo pumping during a five-hour client appointment, subjected to vulgar comments about her body upon returning, and was constructively discharged. There is a causal connection between Plaintiff's protected activity and Defendant's unlawful employment practices. Plaintiff suffered damages as a result of Defendant's conduct.

COUNT SIX –SEX AND/OR PREGNANCY DISCRIMINATION - TEXAS LAW (TCHRA)

61. Plaintiff is an employee within the meaning of the Texas Commission on Human Rights Act (TCHRA), Texas Labor Code § 21.002(7) and belongs to the class of employees protected under the statute, namely, female employees. See Texas Labor Code § 21.101.

62. Defendant is an employer within the meaning of Texas Labor Code § 21.002(8).

63. Defendant intentionally discriminated against Plaintiff because of her sex and/or pregnancy in violation of the Texas Labor Code by subjecting her to a hostile working environment and constructively discharging her. As a direct and proximate cause of Defendant's conduct, Plaintiff suffered damages.

AGENCY

64. As Area Supervisor and Program Manager, Keisha Matthews and Tasha Yager are agents of Defendant, and Defendant is vicariously liable for their actions which were taken in the course and scope of their employment. Alternatively, Defendant was negligent because it knew or should have known about the harassment and discrimination and failed to stop it.

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

65. Plaintiff timely filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission (EEOC) against each Defendant on or about October 29, 2024, Charge No. 450-2025-01024 and Charge No. 450-2025-01025. Under the Work-Sharing Agreement between the EEOC and the Texas Workforce Commission Civil Rights Division (CRD), the Charge was deemed to be dually filed with CRD. Plaintiff timely filed her Complaint within ninety days of receiving the Right to Sue Notice on or about February 25, 2026.

## CONDITIONS PRECEDENT

66. All conditions precedent have been performed or have occurred.

## DAMAGES

67. Reinstatement is not practicable. Plaintiff has made diligent efforts to find comparable alternate employment. Plaintiff has suffered actual damages in the form of past and future lost wages, fringe benefits, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. Plaintiff is entitled to liquidated damages under the PUMP Act. Plaintiff is entitled to punitive damages.

## ATTORNEY'S FEES

68. Plaintiff was forced to engage counsel to protect her rights. Plaintiff is entitled to an award of attorneys' fees and costs (including but not limited to an award of reasonable expert witness fees) pursuant to 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 216(b), and/or Texas Labor Code § 21.259.

## INTEREST

69. Plaintiff is entitled to prejudgment and post judgment interest at the highest lawful rate.

## JURY TRIAL DEMAND

70. Plaintiff demands a jury trial.

## PRAYER

**WHEREFORE**, Plaintiff prays for judgment against Defendant for the following:

a. Past and future compensatory damages as alleged above;

b. Past and future lost wages and benefits (backpay and front pay);

c. Liquidated damages;

d. Punitive damages;

e. Attorneys' fees and costs;

f. Prejudgment and post-judgment interest;

g. Such other and further relief, at law or in equity, to which Plaintiff may show herself justly and lawfully entitled.

Respectfully submitted,

By: /s/ Holly B. Williams
Holly B. Williams
Texas Bar No. 00788674

**WILLIAMS LAW FIRM, P. C.**
1209 W Texas Ave
Midland, TX 79701-6173
432-682-7800
432-682-1112 (fax)
holly@williamslawpc.com

**ATTORNEY FOR PLAINTIFF**
**KYLIA SNIDER**