**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | | |
|---|---|---|
| KYLIA SNIDER,<br><br>*Plaintiff*,<br><br>v.<br><br>RES-CARE, INC. AND EDUCARE COMMUNITY LIVING CORPORATION – TEXAS,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CAUSE NO. 1:26-cv-216-H |

**<u>DEFENDANT RES-CARE, INC.'S FIRST AMENDED RULE 12(B)(6) MOTION TO DISMISS AND BRIEF IN SUPPORT</u>**

**CERTIFICATE REGARDING USE OF GENERATIVE ARTIFICIAL INTELLIGENCE**

Counsel for Defendant Res-Care, Inc. hereby discloses in compliance with N.D. Tex. L.R. 7.2(f) that no portions of this brief were prepared with the assistance of generative artificial intelligence. In an abundance of caution, however, pursuant to L.R. 7.2(f), counsel discloses the use of Harvey in connection with this motion and brief for the following purpose:

- Review file-ready draft for typographical, grammatical, and formatting errors.

# TABLE OF CONTENTS

Table of Authorities ..... i

I. Introduction ..... 1

II. Relevant Allegations ..... 3

III. Legal Standard ..... 6

IV. Arguments and Authorities ..... 7

A. Plaintiff Fails to State a PUMP Act Claim Against Res-Care. ..... 7

1. Plaintiff does not plausibly allege that Res-Care was her employer under the FLSA. ..... 7

2. Plaintiff's PUMP Act retaliation claim likewise fails because she does not plausibly allege that Res-Care was her employer or retaliated against her. ..... 11

B. Plaintiff Fails to State a PWFA Claim Against Res-Care. ..... 13

1. Plaintiff does not allege that Res-Care denied her an accommodation. ..... 13

2. Plaintiff fails to plead a PWFA retaliation claim against Res-Care. ..... 15

C. Plaintiff Cannot Cure These Deficiencies Through Collective Pleading Against "Defendants." ..... 16

V. Conclusion ..... 18

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6, 10, 12, 17

*Barrick v. Edge OFS Holdings, LLC*,
No. PE-24-CV-00003-DC-DF, 2025 WL 498548 (W.D. Tex. Jan. 29, 2025), *report and recommendation adopted*, No. P:24-CV-00003-DC, 2025 WL 495563 (W.D. Tex. Feb. 13, 2025)....................10, 17

*Bates v. Caliber Holdings LLC*,
No. 3:25-CV-1831-E-BN, 2025 WL 3454211 (N.D. Tex. Oct. 29, 2025), *report and recommendation adopted*, No. 3:25-CV-1831-E-BN, 2025 WL 3452649 (N.D. Tex. Dec. 1, 2025) ....................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................6

*Escobedo v. Metal Protective Coating Pros., Inc.*,
No. 13-CV-2405, 2013 WL 6504675 (S.D. Tex. Dec. 11, 2013)....................17

*Fernandez v. Jani-King Int'l, Inc.*,
No. 4:17-CV-1401, 2018 WL 542283 (S.D. Tex. Jan. 23, 2018)....................17

*Fernandez v. Jani-King Int'l, Inc.*,
No. H-17-1401, 2018 WL 539364 (S.D. Tex. Jan. 8, 2018), *report and recommendation adopted sub nom.* ....................17

*Gill v. Bennett*,
No. 4:17-CV-00611-O-BP, 2018 WL 1663287 (N.D. Tex. Apr. 6, 2018)....................9

*Goldberg v. Whitaker House Coop.*,
366 U.S. 28 (1961)....................7

*Gray v. Powers*,
673 F.3d 352 (5th Cir. 2012) ....................7, 8, 9

*Joaquin v. Coliseum Inc.*,
No. A-15-CV-787-LY, 2016 WL 3906820 (W.D. Tex. July 13, 2016)....................6, 9, 16, 18

*Joaquin v. Hinojosa*,
No. A-15-CV-787-LY, 2016 WL 7647630 (W.D. Tex. Aug. 2, 2016)....................6

*Johnson v. Wag Hotels, Inc.*,
No. 3:24-CV-3268-BN, 2025 WL 992573 (N.D. Tex. Apr. 2, 2025) ....................7, 12

*Keiper v. CNN Am., Inc.*,
No. 24-CV-875, 2024 WL 5119353 (E.D. Wis. Dec. 16, 2024) ....14

*Lusk v. Foxmeyer Health Corp.*,
129 F.3d 773 (5th Cir. 1997) ....7

*Tilford v. TEGNA Inc.*,
No. 3:25-CV-1717-D, 2025 WL 3522710 (N.D. Tex. Dec. 9, 2025)....7

*Watson v. Graves*,
909 F.2d 1549 (5th Cir. 1990) ....8

*Williams v. Henagan*,
595 F.3d 610 (5th Cir. 2010) ....7

**Statutes**

29 U.S. Code § 203(d) .... *passim*

29 U.S. Code § 215(a)(3)....2, 11, 12

29 U.S. Code § 218d.... *passim*

42 U.S. Code § 2000gg *et seq*.... *passim*

**Other Authorities**

FED. R. CIV. P. 8....6

FED. R. CIV. P. 12(b)(6) ....1, 3, 6, 18

Defendant Res-Care, Inc. ("Res-Care") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Kylia Snider's ("Plaintiff") claims against Res-Care under the Providing Urgent Maternal Protections for Nursing Mothers Act ("PUMP Act"), 29 U.S.C. § 218d, and the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg *et seq*. In support, Res-Care respectfully shows as follows:

## I. INTRODUCTION

Plaintiff worked for EduCare Community Living Corporation–Texas ("EduCare"), a subsidiary of Res-Care. Despite another opportunity to amend her pleading, Plaintiff still fails to allege facts showing that Res-Care exercised the control necessary to qualify as her employer under the Fair Labor Standards Act ("FLSA"). She does not allege that Res-Care hired or fired her, supervised her daily work, controlled her schedule or working conditions, or determined her compensation.[1] Indeed, Plaintiff acknowledges that EduCare—not Res-Care—issued her paychecks.[2]

Rather than plead facts establishing Res-Care's role in her employment, Plaintiff continues to rely on collective allegations against "Defendants." She alleges that Res-Care "was affiliated with EduCare, but discovery is needed to determine the exact nature of the relationship."[3] Elsewhere, she characterizes the companies as a "single integrated employer."[4] Neither allegation establishes that Res-Care exercised employer authority over Plaintiff under the FLSA.

That distinction is critical to Plaintiff's claims under the PUMP Act. The PUMP Act imposes accommodation obligations on an employee's employer, as defined by the FLSA. *See* 29

---

[1] Plaintiff's Second Amended Complaint, Dkt. No. 28 (hereinafter, "Amended Complaint"), at ¶¶ 9, 17–18.

[2] *Id*. at ¶ 23.

[3] *Id*. at ¶ 9.

[4] *Id*. at ¶ 13.

U.S.C. §§ 203(d), 218d. Whether Res-Care qualifies as Plaintiff's employer therefore turns on the economic realities of their relationship—not merely Res-Care's corporate affiliation with EduCare. Plaintiff's conclusory allegations concerning an integrated employer do not substitute for facts showing that Res-Care exercised the requisite control over her employment.

Plaintiff's PUMP Act retaliation claim suffers from a separate defect. Although the FLSA's anti-retaliation provision applies more broadly to "any person," Plaintiff must still allege facts connecting Res-Care to the challenged conduct. *See* 29 U.S.C. § 215(a)(3). She does not. The Amended Complaint identifies no Res-Care employee who directed the allegedly retaliatory assignment, made the challenged statements, disciplined Plaintiff, altered her working conditions, or participated in the events Plaintiff claims resulted in her constructive discharge. Instead, her allegations concern individuals associated with EduCare.[5]

Plaintiff's PWFA claims are similarly deficient. The PWFA requires covered entities to provide reasonable accommodations for an employee's "known limitations" related to pregnancy, childbirth, or associated medical conditions, absent undue hardship. 42 U.S.C. §§ 2000gg(4), 2000gg-1(1). Although Plaintiff alleges that she requested a private space to express breast milk, her factual allegations identify EduCare personnel as the individuals involved in those requests and the resulting accommodation decisions. She does not allege sufficient facts demonstrating that Res-Care itself received, evaluated, and then denied her accommodation request.[6]

The same deficiency undermines Plaintiff's PWFA retaliation claim. The Amended Complaint does not identify any Res-Care employee who knew of Plaintiff's protected activity or participated in the alleged retaliation. Nor does it allege facts showing that Res-Care directed,

[5] *See id.* at ¶¶ 26–31, 35–38, 43–46, 76, 89–90, 114–115, 120.

[6] *See id.* at ¶¶ 26–31, 37–38, 41, 43–46, 114.

authorized, or caused the challenged conduct. Instead, Plaintiff attributes specific acts to EduCare personnel and then asserts liability against both corporations through collective allegations.[7]

Plaintiff cannot establish Res-Care's liability merely by treating a parent corporation and its subsidiary as interchangeable. Her Amended Complaint adds allegations concerning their corporate relationship but still fails to connect Res-Care to the statutory requirements and alleged misconduct underlying her claims. Because the Amended Complaint does not plausibly allege a basis for imposing PUMP Act or PWFA liability on Res-Care, the Court should dismiss those claims against it under Rule 12(b)(6).

## II. RELEVANT ALLEGATIONS

Despite amending her complaint, Plaintiff still fails to plead facts establishing Res-Care's role in her employment or the alleged misconduct. Plaintiff alleges that Res-Care "was affiliated with EduCare," but acknowledges that "discovery is needed to determine the exact nature of the relationship."[8]

Plaintiff nevertheless asserts that Res-Care and EduCare "operate as a single integrated employer."[9] In support, she alleges that the companies share "HR, payroll, facilities, and equipment," have common management and overlapping officers, and share common ownership or financial control.[10] Plaintiff also alleges that her company laptop displayed a "RES-CARE" logo and that she received an email address ending in "@rescare.com."[11]

---

[7] *Id*. at ¶¶ 26–31, 37–38, 41, 43–45, 120–122.

[8] *Id*. at ¶ 9.

[9] *Id*. at ¶ 13.

[10] *Id.*

[11] *Id*. at ¶ 20.

These allegations concern the companies' corporate relationship and shared resources, not Res-Care's control over Plaintiff's employment. Plaintiff does not allege that Res-Care hired or fired her, supervised her daily work, controlled her schedule or working conditions, determined her compensation, or maintained her employment records. Instead, the Amended Complaint identifies EduCare as the entity that employed Plaintiff and issued her paychecks.[12]

The allegations concerning Plaintiff's requests for pumping accommodations likewise identify individuals working at EduCare's facility rather than any employee expressly identified as working for Res-Care. Plaintiff alleges that she repeatedly requested accommodations from Program Manager Tasha Yager ("Yager").[13] She later complained to Yager about the lack of appropriate accommodations and presented her with literature concerning the PUMP Act.[14] Yet Plaintiff does not allege that Yager was employed by Res-Care, that Yager communicated Plaintiff's requests or complaints to Res-Care, or that Res-Care participated in any resulting accommodation decision.[15]

The Amended Complaint similarly fails to identify Res-Care's involvement in the conduct underlying Plaintiff's retaliation claims. Plaintiff alleges that "Defendants" discouraged her from taking pumping breaks, issued a verbal warning for taking a break, failed to provide a private space to express breast milk, directed her to pump in her car, required her to pump at her desk near a male coworker, assigned her to transport a male client to a five-hour offsite appointment, and subjected her to inappropriate comments about her body.[16]

---

[12] *Id.* at ¶ 23.

[13] *Id.* at ¶¶ 26, 31.

[14] *Id.* at ¶¶ 29, 40, 42.

[15] *See id.*

[16] *See id.* at ¶¶ 89–90, 120.

But when Plaintiff describes the underlying events, she attributes the challenged conduct to specific individuals—not to Res-Care. She alleges that Yager verbally warned her about taking a break to pump in the bathroom and directed her to pump in her car.[17] She further alleges that Area Manager Keisha Matthews ("Matthews") assigned her to transport a male client to an offsite appointment and that Yager and Matthews made inappropriate comments about her body when she returned.[18] Plaintiff does not allege that either individual was employed by Res-Care or that any Res-Care employee directed, authorized, or participated in those actions.

Plaintiff relies on substantially the same conduct to support her PWFA retaliation claim.[19] Again, the specific allegations concern Yager's statements about Plaintiff's pumping breaks, Matthews's assignment of the offsite appointment, and the comments Yager and Matthews allegedly made afterward.[20] The Amended Complaint identifies no Res-Care employee who engaged in those acts with knowledge of Plaintiff's protected activity, and then participated in the circumstances Plaintiff claims resulted in her constructive discharge.[21]

Yet when pleading her statutory claims, Plaintiff abandons these distinctions. She groups Res-Care and EduCare together as "Defendants" and alleges collectively that their violations were willful, that they acted with malice or reckless indifference, and that their conduct caused Plaintiff's alleged injuries.[22] These conclusions do not identify what Res-Care allegedly did, who acted on its behalf, or how it participated in the challenged conduct.

---

[17] *See id*. at ¶¶ 29, 35.

[18] *See id*. at ¶¶ 43–45.

[19] *See id*. at ¶ 120.

[20] *See id*. at ¶¶ 29, 35, 43–45, 120.

[21] *See id*.

[22] *See id*. at ¶¶ 90–93, 121–122.

Thus, although the Amended Complaint adds allegations concerning the companies' corporate affiliation and shared resources, it still fails to connect Res-Care to the employment decisions and alleged misconduct underlying Plaintiff's PUMP Act and PWFA claims. Plaintiff cannot establish Res-Care's liability merely by attributing conduct alleged against individuals at EduCare's facility to both corporate defendants through collective pleading.

## III. LEGAL STANDARD

Rule 8 requires a complaint to plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). A claim is plausible only when the pleaded facts permit a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. (citing *Twombly*, 550 U.S. at 556). Mere possibility or speculation does not suffice.

In evaluating a Rule 12(b)(6) motion, the Court accepts well-pleaded factual allegations as true but disregards legal conclusions masquerading as facts. *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," cannot survive dismissal. *Id*. (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

These principles are particularly important when a plaintiff seeks to impose liability on related but legally distinct corporate entities. Plaintiff must plead facts establishing a plausible basis for liability as to Res-Care itself. *See Joaquin v. Coliseum Inc.*, No. A-15-CV-787-LY, 2016 WL 3906820, at *3, *8 (W.D. Tex. July 13, 2016), report and recommendation approved sub nom. *Joaquin v. Hinojosa*, No. A-15-CV-787-LY, 2016 WL 7647630 (W.D. Tex. Aug. 2, 2016). She cannot attribute EduCare's conduct—or the conduct of EduCare's employees—to Res-Care merely by grouping the two corporations together as "Defendants." Nor can conclusory allegations that the entities constitute a "single integrated employer" substitute for facts showing that Res-Care satisfies the statutory requirements for liability under the particular statutes invoked. *See*

*Johnson v. Wag Hotels, Inc.*, No. 3:24-CV-3268-BN, 2025 WL 992573, at *4 (N.D. Tex. Apr. 2, 2025).

## IV. ARGUMENTS AND AUTHORITIES

### A. Plaintiff Fails to State a PUMP Act Claim Against Res-Care.

#### *1. Plaintiff does not plausibly allege that Res-Care was her employer under the FLSA.*

The PUMP Act amended the FLSA to require an "employer" to provide qualifying nursing employees reasonable break time and an appropriate private place to express breast milk. *See* 29 U.S.C. § 218d. Thus, Plaintiff can state a PUMP Act claim against Res-Care only if she plausibly alleges that Res-Care was her "employer" under the FLSA.

"The doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees." *Tilford v. TEGNA Inc.*, No. 3:25-CV-1717-D, 2025 WL 3522710, at *2 (N.D. Tex. Dec. 9, 2025) (quoting *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997)). The FLSA defines an "employer" as a person "acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit applies an economic-realities test that considers whether the alleged employer: (1) possessed the power to hire and fire the employee; (2) supervised and controlled the employee's work schedule or conditions of employment; (3) determined the employee's rate and method of payment; and (4) maintained employment records. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012); *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010). The inquiry focuses on the "economic reality" of the relationship between the employee and the particular defendant alleged to be her employer. *See Gray*, 673 F.3d at 355 (The "test originates in the Supreme Court's holding that 'economic reality' should govern the determination of employer status under the FLSA.") (citing *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961)). In instances where there "may

be more than one employer," the Fifth Circuit "must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test." *Id.* (quoting *Watson v. Graves*, 909 F.2d 1549, 1556 (5th Cir. 1990)) (internal quotation marks omitted).

The Amended Complaint still fails to plead facts establishing that Res-Care was Plaintiff's employer under the FLSA's economic-realities test. Plaintiff does not allege that Res-Care had authority to hire or fire her, supervised her work, controlled her schedule or working conditions, determined her compensation, or maintained her employment records.

The Amended Complaint's specific allegations reinforce this deficiency. Every individual Plaintiff identifies as supervising her or participating in the challenged employment decisions was an EduCare employee.[23] Plaintiff identifies no Res-Care employee who supervised her, exercised authority over her employment, or made or directed any employment decision affecting her. Although Plaintiff adds allegations concerning shared corporate resources and personnel, she does not explain how those arrangements gave Res-Care control over her employment.[24] The Amended Complaint therefore still lacks facts supporting a plausible inference that Res-Care exercised the authority necessary to qualify as Plaintiff's employer under the FLSA.

Plaintiff attempts to overcome these deficiencies by alleging that Res-Care "was affiliated with EduCare" and that the entities constitute a "single integrated employer."[25] But corporate affiliation alone does not establish an employment relationship under the FLSA. *See Gray*, 673 F.3d at 357 (the Fifth Circuit "decline[d] to adopt a rule that would potentially impose individual liability on all shareholders, members, and officers of entities that are employers under the FLSA based on their position rather than the economic reality of their involvement in the company.");

[23] *See id.* at ¶¶ 26–31, 35–38, 40–45.

[24] *See id.* at ¶¶ 13–23.

[25] *Id.* at ¶ 13.

*Joaquin*, 2016 WL 3906820, at *5 ("Mere corporate relationship is also insufficient to give standing to sue under the FLSA.") (citations omitted).

Nor do Plaintiff's generalized allegations concerning an "interrelation of operations," "common management," and "common ownership or financial control" establish that Res-Care employed her. The relevant inquiry is whether Res-Care exercised the employer functions identified in the FLSA's economic-realities test. *See Gray*, 673 F.3d at 355. Plaintiff pleads no facts showing that it did. Her allegations concerning the companies' corporate affiliation, a potential sale involving Res-Care, and Texas Franchise Tax Public Information Reports establish, at most, aspects of their corporate relationship.[26] They do not establish that Res-Care exercised authority over Plaintiff's employment.

Plaintiff also relies on onboarding materials and HR policies referencing "RES-CARE or BrightSpring," a company laptop displaying a "RES-CARE" logo, and an email address ending in "@rescare.com." [27] But shared corporate branding, policies, and technology do not, without more, establish an employment relationship under the FLSA. Plaintiff does not allege that Res-Care used these resources to supervise her work, control her schedule or duties, determine her compensation, or exercise authority over her employment. *See Gill v. Bennett*, No. 4:17-CV-00611-O-BP, 2018 WL 1663287, at *4 (N.D. Tex. Apr. 6, 2018) (dismissing an FLSA claim where the plaintiff alleged no particularized facts concerning the defendant's role in hiring, firing, supervision, scheduling, or compensation).

Indeed, Plaintiff's specific factual allegations identify EduCare employees as the individuals who supervised her and participated in the employment decisions underlying this

[26] *Id*. at ¶¶ 9, 14–15.

[27] *Id*. at ¶ 20.

lawsuit.[28] Plaintiff does not identify a Res-Care employee who exercised comparable authority over her. Against those allegations, Paragraph 70's assertion that "Defendants are employers within the meaning of the FLSA and the PUMP Act" is a legal conclusion unsupported by facts establishing Res-Care's employer status.[29] *See Iqbal*, 556 U.S. at 678.

Plaintiff cannot cure that deficiency by grouping Res-Care and EduCare together as "Defendants" or invoking the label "single integrated employer."[30] As the court explained in *Barrick v. Edge OFS Holdings, LLC*, "collective allegations against multiple defendants are insufficient to establish an employment relationship in the FLSA context." No. PE-24-CV-00003-DC-DF, 2025 WL 498548, at *3 (W.D. Tex. Jan. 29, 2025), report and recommendation adopted, No. P:24-CV-00003-DC, 2025 WL 495563 (W.D. Tex. Feb. 13, 2025). Rather, a plaintiff must plead facts concerning the employment relationship sufficient to establish a plausible basis for imposing FLSA liability on each alleged employer. *Id.*

The Amended Complaint does not meet that standard. Even accepting Plaintiff's factual allegations as true, they establish a corporate relationship between Res-Care and EduCare, not that Res-Care exercised the authority necessary to qualify as Plaintiff's employer under the FLSA. Accordingly, Plaintiff has not plausibly alleged that Res-Care was subject to the PUMP Act's employer obligations, and her claims seeking to enforce those obligations against Res-Care should be dismissed.

---

[28] *See id.* at ¶¶ 23, 26–31, 35–38, 40–45.

[29] *Id.* at ¶ 70.

[30] *See id.* at ¶¶ 13, 70.

### 2. ***Plaintiff's PUMP Act retaliation claim likewise fails because she does not plausibly allege that Res-Care was her employer or retaliated against her.***

Plaintiff separately asserts retaliation under the PUMP Act.[31] The PUMP Act amended the FLSA, and the FLSA's anti-retaliation provision makes it unlawful for "any person" to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). Plaintiff alleges that her complaints concerning pumping accommodations constituted protected activity and that "Defendants" retaliated against her because of those complaints.[32]

But the Amended Complaint fails to plead facts plausibly connecting Res-Care to the alleged retaliation. Plaintiff alleges that she objected to Area Manager Matthews's conduct and subsequently experienced adverse treatment.[33] Yet the specific retaliatory acts identified in the Amended Complaint concern Matthews and Yager, neither of whom Plaintiff identifies as a Res-Care employee.[34] The Amended Complaint does not explain how Res-Care participated in, directed, or caused those acts. *See id*.

Specifically, Plaintiff alleges that, five days after her April 26 complaint, Matthews assigned her to transport a client to an offsite appointment that prevented her from pumping.[35] She further alleges that Matthews and Yager made offensive comments about her body when she returned.[36] Plaintiff ultimately resigned, alleging that "no one" responded to her resignation

---

[31] *Id*. at ¶¶ 84–93.

[32] *Id*. at ¶¶ 90–93.

[33] *Id*. at ¶¶ 43, 89–93.

[34] *Id*. at ¶¶ 26–31, 35–38, 43–45.

[35] *Id*. at ¶¶ 43–44.

[36] *Id*. at ¶ 45.

email.[37] But she does not allege that Res-Care directed the offsite assignment, authorized the alleged comments, imposed discipline, altered her working conditions, or participated in the circumstances she contends resulted in her constructive discharge. Nor does she plead facts showing that Res-Care knew of her protected complaints and caused any adverse action because of them. *See Johnson*, 2025 WL 992573, at *6–7.

Plaintiff attempts to attribute the challenged conduct to Res-Care by alleging that Matthews and Yager were "agents of Defendants."[38] But she pleads no facts showing that either individual acted on Res-Care's behalf, exercised authority delegated by Res-Care, or acted at Res-Care's direction in connection with the alleged retaliation. Merely labeling these individuals agents of both corporate defendants does not establish a factual basis for attributing their conduct to Res-Care. *See Johnson*, 2025 WL 992573, at *4 ("[A] threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice.") (citing *Iqbal*, 556 U.S. at 678).

The FLSA's anti-retaliation provision requires a plausible connection between the defendant's conduct and the employee's protected activity. Plaintiff alleges specific conduct by Matthews and Yager but offers only collective allegations against "Defendants" to impose liability on Res-Care. Without facts showing that Res-Care engaged in, directed, or caused adverse treatment because of Plaintiff's protected activity, the Amended Complaint fails to state a retaliation claim against Res-Care under § 215(a)(3). That claim should therefore be dismissed.

---

[37] *Id.* at ¶ 47

[38] *Id.* at ¶ 126.

### B. Plaintiff Fails to State a PWFA Claim Against Res-Care.

#### *1. Plaintiff does not allege that Res-Care denied her an accommodation.*

The PWFA requires a covered entity to make reasonable accommodations to the "known limitations" of a qualified employee related to pregnancy, childbirth, or related medical conditions, absent undue hardship. 42 U.S.C. § 2000gg-1(1). The statute defines a "known limitation" as a limitation that "the employee or the employee's representative has communicated to the employer." 42 U.S.C. § 2000gg(4). Accordingly, a plaintiff must plausibly allege that the employer received notice of her limitation and failed to provide a required accommodation. *See Bates v. Caliber Holdings LLC*, No. 3:25-CV-1831-E-BN, 2025 WL 3454211, at *9 (N.D. Tex. Oct. 29, 2025), report and recommendation adopted, No. 3:25-CV-1831-E-BN, 2025 WL 3452649 (N.D. Tex. Dec. 1, 2025) (citing 42 U.S.C. § 2000gg-1(1)). Plaintiff fails to allege Res-Care denied her an accommodation.

The Amended Complaint fails to plead facts establishing Res-Care's responsibility for the alleged failure to accommodate. Plaintiff alleges that, before beginning work, she informed HR Generalist Lisa Hernandez ("Hernandez") that she had recently given birth and needed a private space to express breast milk.[39] She later directed similar requests to Yager and complained to Client Benefit Coordinator Jenny Spruill ("Spruill"), Yager, and Hernandez about the accommodations provided.[40] But the Amended Complaint does not explain what authority these individuals exercised on Res-Care's behalf or identify any accommodation decision that Res-Care made, directed, or controlled.

---

[39] *See id.* at ¶ 24.

[40] *See id.* at ¶¶ 26, 39, 42.

Nor does Plaintiff allege facts showing that Res-Care received her accommodation requests through its own personnel or otherwise assumed responsibility for responding to them. Instead, the Amended Complaint attributes the relevant communications and decisions to individuals associated with Plaintiff's employment at EduCare.[41] Although Plaintiff alleges a corporate relationship between the two entities, she does not explain how that relationship made Res-Care responsible for the alleged denial of accommodations. *See Keiper v. CNN Am., Inc.*, No. 24-CV-875, 2024 WL 5119353, at *3–5 (E.D. Wis. Dec. 16, 2024) ("Employers only face liability under the PWFA for failure to accommodate their employee's known limitations.") (citing 42 U.S.C. § 2000gg-1(1)).

Plaintiff attempts to overcome this deficiency through collective pleading. Her factual allegations identify the individuals who received her requests and allegedly failed to provide appropriate accommodations.[42] But her PWFA count abandons those distinctions, alleging instead that "Defendants" knew of her limitations and failed to accommodate them.[43] The Amended Complaint offers no corresponding facts establishing Res-Care's responsibility for those alleged failures.

Plaintiff's integrated-employer allegation does not independently resolve that deficiency. Even assuming the companies' relationship could support treating them as an integrated employer under the PWFA, Plaintiff must plead facts sufficient to support that theory and establish a plausible basis for attributing the alleged accommodation failures to Res-Care. Merely alleging shared corporate resources and then referring to both entities collectively as "Defendants" does

---

[41] *See id.* at ¶¶ 26–31, 40, 42.

[42] *See id.* at ¶¶ 24, 26, 39, 42.

[43] *Id.* at ¶¶ 114–116.

not establish that Res-Care was responsible for providing or denying the requested accommodations.

Because the Amended Complaint does not plausibly allege a basis for attributing the alleged failure to accommodate to Res-Care, Plaintiff's PWFA failure-to-accommodate claim against Res-Care should be dismissed.

***2. Plaintiff fails to plead a PWFA retaliation claim against Res-Care.***

The Amended Complaint fails to allege facts plausibly establishing that Res-Care retaliated against Plaintiff in violation of the PWFA. The PWFA prohibits discrimination against an employee because the employee "opposed any act or practice made unlawful by" the statute or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under it. 42 U.S.C. § 2000gg-2(f)(1).

Plaintiff alleges that she engaged in protected activity by complaining to Hernandez, presenting PUMP Act literature to Yager, and objecting to Matthews's conduct.[44] But the Amended Complaint does not plausibly connect Res-Care to the alleged retaliation.[45] Instead, Plaintiff attributes the challenged work assignment and retaliatory comments to individuals associated with her employment at EduCare [46] She alleges no facts showing that Res-Care directed, authorized, or participated in those actions or otherwise caused the adverse treatment she describes.

Rather than identify conduct attributable to Res-Care, Plaintiff again alleges collectively that "Defendants" retaliated against her.[47] But collective allegations cannot substitute for facts supporting a reasonable inference that Res-Care engaged in, directed, or caused adverse treatment

---

[44] *See id.* at ¶¶ 42–43.

[45] *See id.* at ¶¶ 26, 29, 35–37, 42–45.

[46] *See id.*

[47] *Id.* at ¶¶ 119–122.

because of Plaintiff's protected activity. *See Joaquin*, 2016 WL 3906820, at *8. Even assuming Res-Care knew of Plaintiff's complaints, the Amended Complaint does not allege facts establishing that Res-Care took or caused any adverse action in response.[48]

Because Plaintiff fails to plead a plausible causal connection between Res-Care and the alleged retaliation, her PWFA retaliation claim against Res-Care should be dismissed.

### C. Plaintiff Cannot Cure These Deficiencies Through Collective Pleading Against "Defendants."

A common deficiency runs through Plaintiff's PUMP Act and PWFA claims against Res-Care. The Amended Complaint identifies individuals associated with EduCare as the principal actors involved in Plaintiff's employment and the alleged misconduct.[49] Yet when pleading her statutory claims, Plaintiff abandons those distinctions, refers to both corporations collectively as "Defendants," and attributes the alleged violations to Res-Care without pleading facts establishing its responsibility for the challenged conduct.[50]

For example, Plaintiff alleges generally that "Defendants" qualify as employers under the FLSA.[51] But her specific allegations identify EduCare personnel as the individuals who supervised her and allegedly engaged in the challenged conduct.[52] Plaintiff then asserts collectively that "Defendants" failed to accommodate her and retaliated against her, without explaining how Res-Care participated in or bore responsibility for those alleged violations.[53]

---

[48] *Id*. at ¶¶ 121–122.

[49] *Id*. at ¶¶ 26–31, 35–38, 41, 43–45.

[50] *Id*. at ¶¶ 90–93, 121–122.

[51] *Id*. at ¶¶ 70, 86.

[52] *Id*. at ¶¶ 89–90, 120.

[53] *Id*. at ¶¶ 90–93, 121–122.

Rule 8 requires sufficient factual allegations to make each defendant's liability plausible. *Iqbal*, 556 U.S. at 678. That requirement has particular force when a plaintiff seeks to impose FLSA liability on multiple related entities. As one court in this Circuit explained, "collective allegations against multiple defendants are insufficient to establish an employment relationship in the FLSA context." *Barrick*, 2025 WL 498548, at *3 (citing *Fernandez v. Jani-King Int'l, Inc.*, No. H-17-1401, 2018 WL 539364, at *2 (S.D. Tex. Jan. 8, 2018), report and recommendation adopted sub nom. *Fernandez v. Jani-King Int'l, Inc.*, No. 4:17-CV-1401, 2018 WL 542283 (S.D. Tex. Jan. 23, 2018)); *see also Escobedo v. Metal Protective Coating Pros., Inc.*, No. 13-CV-2405, 2013 WL 6504675, at *2 (S.D. Tex. Dec. 11, 2013). Rather, a plaintiff must plead facts concerning "the employment relationship" sufficient to state a "facially plausible claim of multiple employer liability under the FLSA." *Barrick*, 2025 WL 498548, at *3 (quoting *Fernandez*, 2018 WL 539364, at *2) (internal quotation marks omitted).

Plaintiff has not pleaded those facts as to Res-Care. Although she alleges a corporate affiliation, shared resources, and overlapping management, she does not identify facts showing that Res-Care exercised the employer functions relevant to the FLSA's economic-realities test. Instead, her specific allegations concern Plaintiff's employment at EduCare and the individuals responsible for her daily supervision.[54] Referring to both corporations as "Defendants" does not establish that Res-Care was Plaintiff's employer under the FLSA.

The same collective pleading fails to establish Res-Care's responsibility for the alleged accommodation failures and retaliation. Plaintiff attributes the challenged conduct principally to Yager and Matthews but does not plead facts showing that either acted on Res-Care's behalf in

---

[54] *See id.* at ¶¶ 26–31, 35–38, 41, 43–46, 72–76, 89–90, 114–115, 120.

connection with those events.[55] Nor does she identify facts establishing that Res-Care directed, authorized, or caused the alleged adverse treatment. Her conclusory allegation that these individuals were agents of both "Defendants" does not, without supporting facts, establish a basis for attributing their conduct to Res-Care.[56]

These deficiencies are substantive, not merely technical. The PUMP Act's accommodation requirements depend on employer status under the FLSA. The PWFA requires a plausible basis for holding Res-Care responsible for the alleged failure to accommodate. And retaliation under either statute requires facts supporting a reasonable inference that Res-Care engaged in, caused, or was otherwise legally responsible for adverse treatment because of Plaintiff's protected activity.

Plaintiff cannot establish those distinct requirements merely by treating a parent corporation and its subsidiary as interchangeable. *See Joaquin*, 2016 WL 3906820, at *3, *8. Because the Amended Complaint fails to plead facts supporting Res-Care's liability under either statute, the Court should dismiss Plaintiff's PUMP Act and PWFA claims against Res-Care.

## V. CONCLUSION

Based on the foregoing, Res-Care respectfully requests that the Court dismiss Plaintiff's PUMP Act and PWFA claims against Res-Care under Rule 12(b)(6) and grant Res-Care all other relief to which it is entitled.

[55] *See id*. at ¶¶ 26–31, 35–38, 40–41, 43–45.

[56] *Id*. at ¶ 126.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: *<u>/s/ Anne-Alise "Ali" Hinckley</u>*
William M. Toles
State Bar No. 00798550
Anne-Alise "Ali" Hinckley
State Bar No. 24090786
Caroline R. Rumbolo
State Bar No. 24131637
500 North Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: wtoles@munsch.com
ahinckley@munsch.com
crumbolo@munsch.com

**ATTORNEYS FOR DEFENDANT RES-CARE, INC.**

## CERTIFICATE OF SERVICE

I certify that on October 21, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

*<u>/s/ Anne-Alise "Ali" Hinckley</u>*
Anne-Alise "Ali" Hinckley