**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| **KYLIA SNIDER,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **CAUSE NO. 1:26-cv-216-H** |
| | § | |
| **RES-CARE, INC. AND EDUCARE COMMUNITY LIVING CORPORATION - TEXAS,** | § | |
| | § | |
| | § | |
| | § | |
| **DEFENDANT.** | § | **JURY DEMANDED** |

# BRIEF IN RESPONSE TO DEFENDANT RES-CARE, INC.'S FIRST AMENDED RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Holly B. Williams
Texas Bar No. 00788674
**WILLIAMS LAW FIRM, P. C.**
1209 W Texas Ave
Midland, TX 79701-6173
432-682-7800
432-682-1112 (fax)
holly@williamslawpc.com

Kyla Gail Cole
Texas State Bar No. 24033113
**COLE/LEGLER PLLC**
8150 N Central Expressway, 10th Floor
Dallas, TX 75206
(214) 748-7777
(214) 748 7778 (fax)
kyla@nlcemployeelaw.com

**ATTORNEYS FOR PLAINTIFF**
**KYLIA SNIDER**

# TABLE OF CONTENTS


TABLE OF CONTENTS .......... ii

TABLE OF AUTHORITIES .......... iii

I. INTRODUCTION .......... 1

II. RELEVANT FACTUAL ALLEGATIONS .......... 2

III. LEGAL STANDARD .......... 4

IV. ARGUMENT AND AUTHORITIES .......... 5

A. Mrs. Snider States a Plausible PUMP Act Claim Against Res-Care. .......... 6

1. Mrs. Snider Plausibly Alleges that Res-Care Was Her Employer Under the PUMP Act. .......... 6

2. Mrs. Snider Plausibly Alleges that Res-Care Retaliated Against Her Under the PUMP Act .......... 12

B. Mrs. Snider Pleads a Plausible PWFA Claim Against Res-Care .......... 13

1. Mrs. Snider Plausibly Alleges that Res-Care Denied Her an Accommodation under the PWFA. .......... 13

2. Mrs. Snider Plausibly Alleges That Res-Care Retaliated Against Her. .......... 16

C. Mrs. Snider Plausibly Alleges that Res-Care is Collectively Liable with EduCare. .......... 16

V. CONCLUSION AND PRAYER .......... 18

CERTIFICATE OF SERVICE .......... 19

# TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................4, 10, 12

*Barrick v. Edge OFS Holdings, LLC*,
No. PE-24-CV-00003-DC-DF, 2025 WL 498548 (W.D. Tex. Jan. 29, 2025), *report and recommendation adopted*, No. P:24-CV-00003-DC, 2025 WL 495563 (W.D. Tex. Feb. 13, 2025)....................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................4, 5, 13

*Bracey v. Merakey*,
No. CV 25-537-SDD-EWD, 2026 WL 1236131 (M.D. La. Mar. 23, 2026), *report and recommendation adopted*, No. CV 25-537-SDD-EWD, 2026 WL 1230810 (M.D. La. Apr. 28, 2026) ....................14, 15

*Carpenters Local Union No. 1846 of United Broth. of Carpenters & Joiners of Am., AFL-CIO v. Pratt-Farnsworth, Inc.*,
690 F.2d 489 (5th Cir. 1982), *amended* (Dec. 8, 1982) ....................15

*E.E.O.C. v. Houston Funding II, Ltd.*,
717 F.3d 425 (5th Cir. 2013)....................1

*Escobedo v. Metal Protective Coating Professionals, Inc.*,
No. 4:13-CV-2405, 2013 WL 6504675 (S.D. Tex. Dec. 11, 2013)....................17

*George v. SI Group, Inc.*,
36 F.4th 611 (5th Cir. 2022)....................5

*Gray v. Powers*,
673 F.3d 352 (5th Cir. 2012)....................6, 9

*Gulf King Shrimp Co. v. Wirtz*,
407 F.2d 508 (5th Cir. 1969)....................9

*In re S. Scrap Material Co., LLC*,
541 F.3d 584 (5th Cir. 2008)....................5

*Leal v. McHugh*,
731 F.3d 405 (5th Cir. 2013)....................4

*Long v. BDP Intern., Inc.*,
919 F. Supp. 2d 832 (S.D. Tex. 2013) ....................17, 18

*Lopez-Martinez v. Villa-Bernal*,
No. A-21-CV-00652-JRN, 2022 WL 22869800 (W.D. Tex. Mar. 30, 2022)....8

*Lovick v. Ritemoney Ltd.*,
378 F.3d 433 (5th Cir. 2004)....5, 13

*Rutherford Food Corp. v. McComb*,
331 U.S. 722 (1947)....9

*Seong Song v. JFE Franchising, Inc.*,
394 F. Supp. 3d 748 (S.D. Tex. 2019)....8

*Sewell v. Monroe City Sch. Bd.*,
974 F.3d 577 (5th Cir. 2020)....5

*Trevino v. Celanese Corp.*,
701 F.2d 397 (5th Cir. 1983)....14, 15

*Turner v. Pleasant*,
663 F.3d 770 (5th Cir. 2011), *as revised* (Dec. 16, 2011)....4

*Williams v. Henagan*,
595 F.3d 610 (5th Cir. 2010)....6

*Wirtz v. Lone Star Steel Co.*,
405 F.2d 668 (5th Cir. 1968)....8, 9

Statutes

Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101....1

Fair Labor Standards Act, 29 U.S.C. § 203(d)....6

Fair Labor Standards Act, 29 U.S.C. § 215(a)(3)....12

Fair Labor Standards Act, 29 U.S.C. § 218(d)....1, 6

Pregnant Worker Fairness Act, 42 U.S.C. § 2000gg....1

Pregnant Worker Fairness Act, 42 U.S.C. § 2000gg-1(1)....14

Pregnant Worker Fairness Act, 42 U.S.C. § 2000gg-2(f)(1)....16

Pregnant Worker Fairness Act, 42 U.S.C. § 2000gg(2)(A)....15

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ........................................................ 1

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(n) ................................................ 15

Rules

FED. R. CIV. P. 8 ........................................................................................................ 13

FED. R. CIV. P. 8(a)(2) ........................................................................................ 10, 12, 13

FED. R. CIV. P. 8(d)(2) .................................................................................................. 1

FED. R. CIV. P. 8(d)(3) .................................................................................................. 1

FED. R. CIV. P. 12(b)(6) ................................................................................................ 4

## I. INTRODUCTION

Since 2013, the Fifth Circuit has recognized that "discriminating against a woman who is lactating or expressing milk violates Title VII and the [Pregnancy Discrimination Act]." *E.E.O.C. v. Houston Funding II, Ltd.*, 717 F.3d 425, 427 (5th Cir. 2013). Laws such as the Providing Urgent Maternal Protections to Nursing Mothers Act ("PUMP Act"), 29 U.S.C. § 218d, and the Pregnant Worker Fairness Act ("PWFA"), 42 U.S.C. § 2000gg *et seq.*, were passed to fill the gaps in other laws so that pregnant employees would enjoy the same protections as other employees. For example, pregnancy is not a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, so there is no duty to reasonably accommodate pregnancy under the ADA. The PUMP Act and PWFA benefit not only pregnant employees, but employers and society as a whole by allowing pregnant workers to safely maintain the health of their pregnancies while simultaneously allowing employers to have the advantage of retaining trained, experienced workers. Healthier babies and healthier mothers lead to reduced absenteeism, greater productivity, reduced health care costs, and families' financial stability.

Plaintiff Kylia Snider alleges eight causes of action for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§2000e *et seq.*, the PUMP Act, the PWFA, and Chapter 21 of the Texas Labor Code.[1] Defendant Res-Care, Inc. ("Res-Care") does not challenge Counts Three, Four, Five, or Eight under Title VII, the PDA, and Chapter 21 of the Texas Labor

---

[1] Mrs. Snider alleged eight causes of action under four statutes because retaliation, discrimination, and failure to accommodate have different elements. (Mrs. Snider does not count the PDA as a separate statute because it amends Title VII.) The same conduct may violate more than one statute, and some statutes allow for more than one cause of action. The Federal Rules explicitly allow for alternate and inconsistent pleading. See FED. R. CIV. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); FED. R. CIV. P. 8(d)(3)("A party can state as many separate claims or defenses as it has, regardless of consistency.").

Code. Res-Care therefore concedes that Mrs. Snider has stated a claim under these statutes. Although not styled as a partial motion to dismiss, Res-Care challenges only Mrs. Snider's claims under the PUMP Act and the PWFA. Even if the Court were to grant Res-Care's motion to dismiss in its entirety, Mrs. Snider has plausibly stated claims under Title VII (including the PDA) and the Texas Labor Code. Therefore, she is entitled to move forward on those claims. The Court should deny Res-Care's Motion to Dismiss her PUMP Act and PWFA claims because Mrs. Snider has plausibly stated claims of discrimination and retaliation under those laws as well.

## II. RELEVANT FACTUAL ALLEGATIONS

Plaintiff Kylia Snider was hired as an Office Coordinator at the Res-Care Community Living Facility in Abilene, Texas, by Ashleigh Agan, who identified herself as "HRA for Res-Care." [Doc. 28 at ¶ ¶ 17, 19]. Mrs. Snider received her offer of employment by email from Ashleigh Agan showing Ms. Agan's email as "ashleigh.agan@rescare.com." The subject line of Mrs. Snider's offer of employment was "Your BrightSpring Offer!" [Doc. 28 at ¶ 17]. (At the relevant time, Res-Care was owned by BrightSpring Health Services, Inc., which is publicly traded on NASDAQ under the symbol BTSG. [Doc. 28 at ¶ 8].) To respond to the offer, Mrs. Snider was directed to a link to the "BrightSpring Health Service career website." [Doc. 28 at ¶ 18].

All of the onboarding documents and HR policies refer to Res-Care or BrightSpring. [Doc. 28 at ¶ 20]. The domain for all employees' email addresses is @rescare.com, like Ms. Agan's. [*Id.*] The company-owned laptop that was issued to Mrs. Snider has a RES-CARE logo for the background. [*Id.*] Mrs. Snider is assigned an email address @rescare.com to use during her employment. [*Id.*]

Mrs. Snider is told that she is assigned to the Res-Care Community Living Center in Abilene and that she reports to both regional management and has a dotted line to corporate accounting personnel George Dudley. [Doc. 28 at ¶ 21].

Mrs. Snider is assigned to attend training at the "corporate office" in Brownwood. The Brownwood corporate office is inside the RES-CARE Community Living Center in Brownwood, Texas. [Doc. 28 at ¶ 22]. Mrs. Snider understands the corporate employees in Brownwood to be employees of Res-Care, including her dotted line manager George Dudley, HR Generalist Lisa Hernandez, and Client Benefit Coordinator Jenny Spruill. [*Id.*]

In the two months that Mrs. Snider works at the Res-Care Abilene facility, no one mentions "EduCare" although EduCare issues Mrs. Snider's paycheck. [Doc. 28 at ¶ 23]. Nobody refers to themselves as an employee of EduCare or Res-Care. [*Id.*] Everyone refers to themselves as "regional" or "corporate." Everyone refers to the entire operation as "Res-Care" or "BrightSpring." [*Id.*]

Mrs. Snider is a mother of four. [Doc. 28 at ¶ 26]. She alleges that she was subjected to a hostile work environment, retaliation, and constructive discharge because she sought to use a breast pump so she could return to work while continuing to breastfeed her last child [Doc. 28]. Ms. Snider was aware of changes in the law, including the PUMP Act, which require an employer to allow breaks and provide a private place with sanitary conditions for pumping. [Doc. 28 at ¶ 42]. She even printed information about the PUMP Act from the Internet and gave it to one of her supervisors. [Doc. 28 at ¶ 42]. Instead of accommodating her, during her six short weeks of employment, Mrs. Snider's supervisors:

1. Told her she could use the conference room (which was not free from intrusion) or the "dungeon" which was legally inadequate [Doc. 28 at ¶ 27];
2. Told her she could pump in her car in view of employees who were smoking in the parking lot [Doc. 28 at ¶ 29];
3. Called her "Pumper" in front of coworkers [Doc. 28 at ¶ 37];

4. Told her she was "sick and disgusting" for wanting to breastfeed her baby and that it is a "sick pleasure" [Doc. 28 at ¶ 37];
5. Forced her to pump in front of clients and coworkers [Doc. 28 at ¶ 36];
6. Gave her work tasks that would not accommodate her pumping schedule, including taking a client off-site for a doctor's appointment [Doc. 28 at ¶ 43];
7. Told her to "make that baby someone else's fucking problem" when she protested that the off-site assignment would interfere with her pumping schedule [Doc. 28 at ¶ 43];
8. When she returned from the appointment, leaking through her clothes, told her, "Damn, your tits look huge," and "They be looking huge." [Doc. 28 at ¶ 45].

This last incident was the final straw that caused Mrs. Snider to quit the next day [Doc. 28 at ¶ 46]. It is plausible that Res-Care was Mrs. Snider's employer under the PUMP Act and the PWFA and that a reasonable person would have quit under the same or similar circumstances.

## III. LEGAL STANDARD

A 12(b)(6) motion to dismiss allows a court to dismiss a claim for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and are rarely granted. *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) citing *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), *as revised* (Dec. 16, 2011). Courts will only grant such motions if the complaint fails to allege enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff need not plead facts sufficient to prove all claims to survive a motion to dismiss. The "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will

reveal evidence of' the necessary claims or elements.'" *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In motions to dismiss for failure to state a claim upon which relief can be granted, the complaint must be construed in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that the actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly.* 550 U.S. at 557. A 12(b)(6) motion "tests the sufficiency of the pleadings, not the merits of the case." *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (citing *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020)). For this reason, well-pleaded factual allegations of a complaint must be taken as true and viewed in the light most favorable to the plaintiff. *Id.* Applying these standards, Res-Care's Motion to Dismiss should be denied.

## IV. ARGUMENT AND AUTHORITIES

The definition of "employer" varies under the PUMP Act and the PWFA. The PUMP Act is based on the Fair Labor Standards Act (FLSA). The PWFA follows Title VII. Mrs. Snider has plausibly alleged that Res-Care was her employer under both statutes. The gravamen of Res-Care's argument is that the two individuals who committed the most egregious acts against Mrs. Snider, Area Manager Keisha Matthews and Program Manager Tasha Yager, are "associated with EduCare" and therefore, their actions cannot be attributed to Res-Care. Mrs. Snider makes no allegations that Ms. Matthews and Ms. Yager are "associated with EduCare." To the contrary, she makes multiple factual allegations, detailed above and below and which must be taken as true, from which it is plausible that both Res-Care and EduCare are collectively liable for the actions of

Ms. Matthews and Ms. Yager as joint employers under the PUMP Act and/or because they form a single integrated employer under the PWFA. Res-Care's arguments are more properly considered at the summary judgment and trial stages after adequate opportunity for discovery. Res-Care's motion to dismiss should be denied.

### A. Mrs. Snider States a Plausible PUMP Act Claim Against Res-Care.

#### 1. Mrs. Snider Plausibly Alleges That Res-Care Was Her Employer Under the PUMP Act.

The PUMP Act requires an "employer" to provide "a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk; and...a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 218(d). The PUMP Act incorporates the definition of an "employer" from the FLSA: "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

Res-Care correctly cites the four-part economic realities test from *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) as the proper inquiry to determine whether an entity is an employer under the FLSA, and by extension, the PUMP Act. [Doc. 31 at p. 11]. The *Gray* factors are: "[w]hether the alleged employer '(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* at 355 (quoting *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010). Res-Care argues that "Plaintiff does not allege that Res-Care had authority to hire or fire her, supervised her work, controlled her schedule or working conditions, determined her compensation, or maintained her employment records." [Doc. 31 at p. 12].

That is simply not true. Mrs. Snider pleads that she received her offer letter via email from Ashleigh Agan, who described herself in a text as "HRA for Rescare." [Doc. 28 at ¶ 17]. Ms. Agan's email address was ashleigh.agan@rescare.com. [*Id.*] Mrs. Snider alleges Ms. Agan's email to her read "Your BrightSpring Offer," and that she was directed to a link to the "BrightSpring Health Service career website" to accept the offer. [Doc. 28 at ¶¶ 17, 18]. Mrs. Snider alleges that BrightSpring owned Res-Care at the time. [Doc. 28 at ¶ 9]. Ms. Agan told Mrs. Snider that she was assigned to the Res-Care Community Living Center in Abilene. [Doc. 28 ¶ 21]. Every document Mrs. Snider received during onboarding, including those outlining payment policies, identified Res-Care as the employer, with no mention of EduCare. [Doc. 28 ¶ 20]. From these facts, it is plausible that Res-Care possessed the authority to hire and fire Mrs. Snider and determine her rate and method of payment, the first and third *Gray* factors. It is also plausible that Ms. Agan as Res-Care HRA maintained Mrs. Snider's employment records, the fourth *Gray* factor.

Mrs. Snider also alleges that Res-Care HRA Ashleigh Agan allowed her to complete training from home before her first day in the office, as an initial accommodation. [Doc. 28 at ¶ 25.] Mrs. Snider alleges that nobody referred to themselves as an employee of EduCare or Res-Care. [Doc. 28 at ¶ 23.] Everyone referred to themselves as "regional" or "corporate." [*Id.*] Everyone referred to the entire operation as "Res-Care" or "BrightSpring." [*Id.*] Mrs. Snider alleges that she was asked to attend training at the "corporate office" in Brownwood, inside the Res-Care Community Living Center in Brownwood, Texas. [Doc. 28 at ¶ 22.] Mrs. Snider alleges that she understood the corporate employees in Brownwood to be employees of Res-Care, including her dotted line manager George Dudley, HR Generalist Lisa Hernandez, and Client Benefit Coordinator Jenny Spruill. [*Id.*] From these facts, it is plausible that Res-Care supervised

and controlled Mrs. Snider's work schedule and conditions of employment, the second *Gray* factor.

Although not cited by Res-Care, another line of cases in the Fifth Circuit provides a different set of factors to determine employer status under the FLSA. The leading case is *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669 (5th Cir. 1968). These factors include

> "(1) Whether or not the employment takes place on the premises of the company?; (2) How much control does the company exert over the employees?; (3) Does the company have the power to fire, hire, or modify the employment condition of the employees?; (4) Do the employees perform a 'specialty job' within the production line?; and (5) May the employee refuse to work for the company or work for others?"

*Id.* at 669–70. While the fourth factor is specific to the facts of *Wirtz*, the others are relevant in the present case. Recent district courts have affirmed that *Wirtz* remains relevant in the employment analysis. *See Lopez-Martinez v. Villa-Bernal*, No. A-21-CV-00652-JRN, 2022 WL 22869800, at *2 (W.D. Tex. Mar. 30, 2022)(denying 12(b)(6) motion); *Seong Song v. JFE Franchising, Inc.*, 394 F. Supp. 3d 748, 755 (S.D. Tex. 2019).

Applying Mrs. Snider's factual allegations to the *Wirtz* factors, Mrs. Snider alleges that she worked at the Res-Care Community Living Center in Abilene, and that she trained at the Res-Care corporate office in Brownwood, inside the Res-Care Community Living Center in Brownwood. [Doc. 28 at ¶¶ 17, 21-22.] From these facts, it is plausible that Mrs. Snider's employment took place on Res-Care's premises, the first factor.

The second factor asks how much control does the company exert over the employees. Mrs. Snider alleges that HRA Ashleigh Agan sent her offer letter, establishing the terms of her employment, assigned her to the Res-Care facility in Abilene, and directed her training activities. [Doc. 28 at ¶ ¶ 17, 21-22].

The third factor, the power to hire, fire, or modify the employment condition, is similar to the first factor of the *Gray* economic realities test. It is plausible from Mrs. Snider's factual allegations detailed *supra* that Res-Care had the power to hire, fire, and modify her employment conditions.

The fifth factor, whether the employee may refuse to work for the company or work for others is a hallmark in determining whether a worker is an employee or independent contractor. In this case, it is plausible that Mrs. Snider was not free to refuse work or work for another company.

*Wirtz* does not state that these were the only factors to be considered in determining whether a company is a person's employer. *Wirtz*, 405 F.2d at 669. *Wirtz* notes that "the total employment situation should be considered with particular regard to the following questions." *Id.* Under *Wirtz*, no single set of factors can be used to determine whether a company is a person's employer. *Id.* Such a determination must be based on a totality of the circumstances that cannot be reduced to a short list of factors. *Id.* This is consistent with Supreme Court precedent. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) ("the determination of the [employer-employee] relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity"); *see also Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969) (agreeing with *Rutherford Food Corp.*). Furthermore, it is consistent with *Gray*. *Gray*, 673 F.3d at 357. The *Gray* court noted that "each element [of the test] need not be present in every case." *Id.*

Beyond applying the *Gray* and *Wirtz* factors to Plaintiff's Second Amended Complaint, an overview of Mrs. Snider's hiring and onboarding suggests that in every way, Res-Care, not EduCare, was responsible for her employment. Res-Care hired her, provided her equipment, set

her up working in a Res-Care facility, provided her with Res-Care's policies as the relevant workplace policies, and assigned her a Res-Care email address. [Doc. 28 at ¶¶ 17, 20, 21]. Mrs. Snider alleges not only that she received "an email from an address ending in '@rescare.com'" as mentioned twice in Res-Care's brief [Doc. 31 at p. 7, 13]. Mrs. Snider alleges that <u>all</u> employees had email addresses ending in @rescare.com. [Doc. 28 at ¶ 20]. The name EduCare was only ever identified on Mrs. Snider's paycheck. [Doc. 28 ¶ 23]. In all other ways, Res-Care established itself as the party that hired and employed Mrs. Snider. *See* [Doc 28 ¶¶ 17-23].

Res-Care claims that Mrs. Snider's amended complaint "still fails to plead facts establishing that Res-Care was Plaintiff's employer under the FLSA's economic-realities test." [Doc. 31 at 8]. This is the incorrect standard by which to evaluate Mrs. Snider's complaint. Mrs. Snider need not establish in her complaint that Res-Care meets the economic-realities test. Rather, Mrs. Snider need only plead "a short and plain statement of the claim" that plausibly suggests that Res-Care is Mrs. Snider's employer to an extent to justify a lawsuit to allow discovery to determine the matter. Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678. Under the appropriate standard, Mrs. Snider has plead facts sufficient to plausibly suggest that Res-Care is her employer.

Res-Care's Motion to Dismiss fails for two reasons. First, Res-Care frequently states that Mrs. Snider only complained to EduCare employees, not Res-Care employees [Doc. 31 at 11]. Two, Res-Care mischaracterizes Mrs. Snider's allegations as to the relationship between EduCare and Res-Care [Doc. 31 at 9].

Res-Care argues that "[e]very individual Plaintiff identifies as supervising her or participating in the challenged employment decisions was an EduCare employee." [Doc. 31 at p. 12]. Res-Care restates this argument numerous times, identifying the individuals Plaintiff complained to and arguing that they are not Res-Care employees. *See, e.g.*, [Doc. 31 at p. 11, 15].

Res-Care additionally argues that "shared corporate branding, policies, and technology do not, without more, establish an employment relationship under the FLSA. Mrs. Snider does not allege that Res-Care used these resources to supervise her work, control her schedule or duties, determine her compensation, or exercise authority over her employment." [Doc. 31 at p. 13]. Res-Care repeatedly makes similar arguments to reduce Mrs. Snider's allegation that Res-Care is her employer to mere discussions of a "corporate relationship." *See, e.g.*, *Id.*

Both arguments fail for similar reasons. Mrs. Snider is not merely alleging a vague "corporate relationship" between Res-Care and EduCare. Nor is she alleging that Res-Care is an employer based only on "an email address ending in '@rescare.com.'" [Doc. 31 at p. 13]. Mrs. Snider alleges that all employees had @rescare.com email addresses, which necessarily includes Area Manager Keisha Matthews and Program Director Tasha Yager. [Doc. 28 at ¶ 20]. Additionally, Mrs. Snider alleges specific facts showing that EduCare and Res-Care had the same principal place of business and common management, she was hired by a Res-Care employee to work at a Res-Care community living center, she received Res-Care's employment policies, and all employees referred to the operation only as Res-Care or BrightSpring. [Doc. 28 ¶¶ 15-24].

These allegations suggest more than an undefined "corporate relationship." [Doc. 31 at p. 8]. They establish that it is plausible that EduCare and Res-Care's relationship is such that EduCare effectively has no independent existence and all EduCare employees are Res-Care employees. *See* [Doc. 28 ¶¶ 15-24].

Res-Care's argument that Mrs. Snider never complained to a Res-Care employee thus must fail as well. There are no allegations regarding which individuals are EduCare employees. As the relationship between EduCare and Res-Care is such that it is plausible that all EduCare employees are agents or employees of Res-Care, it is plausible that Ms. Mathews and Ms. Yager are

necessarily Res-Care employees. Everyone that Mrs. Snider complained to at work about her mistreatment was necessarily a Res-Care employee.

At best, Res-Care can argue that Mrs. Snider has not definitively proved that Res-Care is an employer. Res-Care stated numerous times in its response that Mrs. Snider had not established the employment relationship. [*See, e.g.*, Doc. 31 at 12-13]. However, Mrs. Snider need not prove the relationship in her pleading. Rather, she must plead "a short and plain statement of the claim showing entitlement to relief," which in this case means, enough facts to plausibly suggest that Res-Care is her employer. FED. R. CIV. P. 8(a)(2); *Iqbal*, 556 U.S. at 678. After doing so, she must be granted the opportunity to engage in discovery to uncover the evidence needed to establish the relationship. *See Jackson v. City of Hearne*, 959 F.3s 194, 202 (5th Cir. 2020) ("To get to discovery, [the Plaintiff] must allege sufficient facts in his claim to state a plausible claim for relief"). For the reasons above, Mrs. Snider has plausibly suggested that Res-Care is her employer.

**2. Mrs. Snider Plausibly Plead That Res-Care Retaliated Against Her Under the PUMP Act**

As Res-Care correctly notes, the PUMP Act amends the FLSA, and coverage under the FLSA's anti-retaliation provision applies more broadly to "any person" rather than just to an "employer." [Doc. 31 at p. 15 citing 29 U.S.C. § 215(a)(3).] Even if the Court were to find that Mrs. Snider has failed to plausibly allege that Res-Care meets the definition of an "employer" under the statute, Res-Care is a "person" under the law.

Res-Care makes essentially the same argument in response to each of Mrs. Snider's claims. Regarding Mrs. Sinder's PUMP Act retaliation claim, Res-Care argues that "the Amended complaint fails to plead facts plausibly connecting Res-Care to the alleged retaliation." [Doc. 31 at p. 15]. Res-Care argues that Mrs. Snider did not identify Ms. Matthews or Ms. Yager as Res-Care employees, making it as if Mrs. Snider did not even allege that Res-Care employees retaliated

against her. Res-Care's argument assumes that Matthews and Yager are EduCare employees, and that is a fact question ultimately to be resolved by a jury. Mrs. Snider alleges that Area Supervisor Keisha Matthews and Program Manager Tasha Yager were agents of both Defendants. [Doc. 28 at ¶ 126.] This legal conclusion is supported by facts including that all employees had email addresses ending in @rescare.com, no one referred to themselves as EduCare employees, instead referring to themselves as "regional" or "corporate," and everyone referred to the entire operation as "Res-Care" or "BrightSpring." [Doc. 28 at ¶¶ 20, 23.] These allegations must be accepted as true at the 12(b)(6) stage. *Lovick*, 378 F.3d at 437.

As discussed above, Mrs. Snider's complaint sufficiently pleads facts raising a plausible claim that Res-Care and EduCare were so intertwined that Res-Care is responsible for the actions of Ms. Yager and Ms. Mathews. Discovery is needed to obtain evidence to further support or disprove this claim. Stating a plausible claim that may be supported by discovery is what *Twombly* requires of Mrs. Snider and what she has done. *Twombly*, 550 U.S. at 556. Res-Care's Motion to Dismiss should be denied.

**B. Mrs. Snider Pleads a Plausible PWFA Claim Against Res-Care.**

**1. Mrs. Snider Plausibly Plead that Res-Care Denied Her an Accommodation under the PWFA.**

Res-Care argues that Mrs. Snider has failed to state a claim under the PWFA because she has not plausibly alleged that Res-Care received notice of her limitation and failed to provide a required accommodation. [Doc. 31 at p. 17.] Specifically, Res-Care claims that "the Amended Complaint does not explain what authority [Ms. Hernandez, Ms. Mathews, Ms. Yager, and Ms. Spruill] exercised on Res-Care's behalf or identify any accommodation decision that Res-Care made, directed, or controlled." *Id.* Such detail goes far beyond Rule 8's requirement for a "short and plain statement of the claim." FED. R. CIV. P. 8(a)(2).

What Mrs. Snider does allege is that she understood both HR Generalist Lisa Hernandez and Client Benefit Coordinator Jenny Spruill to be employees of Res-Care. [Doc. 28 at ¶ 22.] Mrs. Snider alleges that she advised Res-Care HR Generalist Lisa Hernandez, before accepting the position, that she had recently given birth and needed a private place to pump, and Ms. Hernandez told her that they could accommodate her request. [Doc. 28 at ¶ 24.] She alleges that Ms. Matthews gave her a derogatory nickname in front of other employees; "Pumper." [Doc. 28 at ¶ 37.] It is plausible from this fact alone that Ms. Matthews was aware of Mrs. Snider's known limitation and need for accommodation.

Mrs. Snider does not merely "invoke[e] the label of 'single integrated employer." [Doc. 31 at p. 14. As detailed below, she provides specific factual allegations to support her claim that EduCare and Res-Care are a single integrated employer, which is the appropriate legal standard under the PWFA.

Specifically, the PWFA uses a four-part test in determining whether two employers are a single integrated employer such that decisions by one employer are imputed onto the other. *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983); *Bracey v. Merakey*, No. CV 25-537-SDD-EWD, 2026 WL 1236131, at *2 (M.D. La. Mar. 23, 2026), *report and recommendation* adopted, No. CV 25-537-SDD-EWD, 2026 WL 1230810 (M.D. La. Apr. 28, 2026). As explained in *Bracey*,

> The PWFA makes it unlawful for a "covered entity" to fail to make reasonable accommodations to the known limitations related to pregnancy, childbirth, or related medical conditions of qualified employees unless the accommodation would impose undue hardship of the operation of the business. 42 U.S.C. § 2000gg-1(1). A "covered entity" under the PWFA is the same as the term "respondent" in § 2000e(n) (Title VII), which "means an employer, employment agency, labor

> organization, joint labor management committee controlling apprenticeship or retraining program, including an on-the-job training program, or Federal entity subject to § 2000e-16....*See* 42 U.S.C. § 2000gg(2)(A); 42 U.S.C. § 2000e(n).

*Bracey*, 2026 WL 1236131 at *2, n.22. With "covered entity" under the PWFA meaning "employer" under Title VII, the same standard as to whether two companies are a single employer applies. The *Trevino* factors include "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Trevino*, 701 F.2d at 404. Not all of the factors need to be present for two employers to be a single integrated enterprise. *Carpenters Local Union No. 1846 of United Broth. of Carpenters & Joiners of Am., AFL-CIO v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 505 (5th Cir. 1982), *amended* (5th Cir. Dec. 8, 1982).

Mrs. Snider has plausibly plead facts meeting each of these elements. Mrs. Snider pleads that both Res-Care and EduCare have the same principal place of business (805 N Whittington Parkway, Louisville, KY 40222) and two shared officers (Jennifer Phipps and Allison L. Brown), meeting the common ownership prong. [Doc. 28 ¶¶ 16-17]. It is plausible from the facts that EduCare's employees are hired by Res-Care employees, given Res-Care's onboarding materials, told they are working at Res-Care locations, and never told anything about EduCare, that there is interrelation of operations, centralized control of labor relations, and common management. [Doc. 28 ¶¶ 17-24].

Under *Trevino*, "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer" under Title VII. *Trevino*, 701 F.2d at 404. Mrs. Snider plausibly argues that Res-Care and EduCare constitute a single integrated employer. Res-Care's Motion to Dismiss should be denied.

**2. Mrs. Snider Plausibly Pleads That Res-Care Retaliated Against Her.**

Under the PWFA, it is unlawful for an employer to discriminate against an employee due to the employee "oppos[ing] any act or practice made unlawful" by the PWFA or "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing" under the statute. 42 U.S.C. § 2000gg-2(f)(1). Res-Care wrongful contends that Mrs. Snider has not sufficiently alleged a PWFA claim against Res-Care because "Plaintiff attributes the challenged work assignment and retaliatory comments to individuals associated with her employment at EduCare." [Doc. 31 at p. 19]. Res-Care further argues that Mrs. Snider does not plausibly connect Res-Care to the retaliation." [Doc. 31 at p. 20]. For the reasons above, this argument fails. Mrs. Snider has sufficiently plead that EduCare and Res-Care constitute a single integrated employer under the PWFA such that Res-Care is liable for the misconduct toward Mrs. Snider. [Doc. 28 ¶¶ 15-24]. Res-Care's Motion to Dismiss should be denied.

**C. Mrs. Snider Has Plausibly Alleged That Res-Care is Collectively Liable with EduCare.**

Res-Care argues that Mrs. Snider "identifies individuals associated with EduCare as the principal actors involved in Mrs. Snider's employment and the alleged misconduct….and attributes the alleged violations to Res-Care without pleading facts establishing its responsibility for the challenged conduct." [Doc. 31 at p. 20]. In fact, Res-Care uses the phrase "individuals associated with EduCare" four times in its Brief. [Doc. 31 at pp. 6, 18-20.] There is nothing in the record for 12(b)(6) purposes to establish which individuals are "associated with EduCare." The only factual allegation relating to Edu-Care is that Edu-Care issued Mrs. Snider's paycheck. [Doc. 28 at ¶ 23]. Res-Care's argument assumes that individuals are employed exclusively either by Res-Care or by EduCare. The whole concept of joint employment under the FLSA and of a single integrated enterprise under the PWFA is that more than one entity can be legally

responsible as an employer. *See, e.g., Barrick v. Edge OFS Holdings, LLC*, No. PE-24-CV-00003-DC-DF, 2025 WL 498548, at *3 (W.D. Tex. Jan. 29, 2025), *report and recommendation* adopted, No. P:24-CV-00003-DC, 2025 WL 495563 (W.D. Tex. Feb. 13, 2025) ("Multiple employers may exist for the purposes of FLSA liability.").

Cases cited by Res-Care, including *Barrick*, are distinguishable because the plaintiffs did not provide the level of detail alleged by Mrs. Snider. [Doc. 31 at 17]. In *Barrick*, the plaintiffs offered evidence that was outside the complaint, which the court properly held could not be considered at the 12(b)(6) stage. *Barrick*, 2025 WL 498548, at *3. For example, to show common ownership, the plaintiffs in *Barrick* offered a Public Information Report showing that one defendant was the other defendant's governing entity. *Id.* at *3. In contrast, Mrs. Snider alleges in her amended complaint that Public Information Reports on file with the Texas Secretary of State show a common principal office in Kentucky and overlapping officers. [Doc. 28 at ¶¶ 14-16.] These allegations are properly before the Court and must be taken as true.

In *Escobedo*, the court stated, "Plaintiff offers nothing in the way of who hired him or had the ability to fire him, who supervised and controlled his schedule and day-to-day duties, who determined what, how, and when he was paid, and the like." *Escobedo v. Metal Protective Coating Professionals, Inc.*, No. 4:13-CV-2405, 2013 WL 6504675, at *2 (S.D. Tex. Dec. 11, 2013). In contrast, Mrs. Snider alleges (along with many other facts) that Res-Care HRA Ashleigh Agan hired her, and that her onboarding documents identified Res-Care and BrightSpring. [Doc. 28 at ¶ 12]. This plausibly suggests that Res-Care had authority over EduCare employees such that Res-Care as parent and EduCare as subsidiary operated as a single integrated employer. *See Long v. BDP Intern., Inc.*, 919 F. Supp. 2d 832, 840–44 (S.D. Tex. 2013)(denying summary judgment for parent company as to subsidiary's workers because there

were genuine issues of material fact on each part of the economic reality test). As in *Long*, the issue of employment status is properly considered at the summary judgment stage after adequate opportunity for discovery. Res-Care's Motion to Dismiss should be denied.

## V. CONCLUSION AND PRAYER

WHEREFORE, Plaintiff Kylia Snider respectfully requests that this Court deny Res-Care's Motion to Dismiss her claims for relief under the PUMP Act and the PWFA; and for such other and further relief, at law or in equity to which Plaintiff may show herself justly and lawfully entitled.

Respectfully submitted,

By: /s/ Holly B. Williams
Holly B. Williams
Texas Bar No. 00788674

**WILLIAMS LAW FIRM, P. C.**
1209 W Texas Ave
Midland, TX 79701-6173
432-682-7800
432-682-1112 (fax)
holly@williamslawpc.com

Kyla Gail Cole
Texas State Bar No. 24033113
**COLE/LEGLER PLLC**
8150 N Central Expressway, 10th Floor
Dallas, TX 75206
(214) 748-7777
(214) 748 7778 (fax)
kyla@nlcemployeelaw.com

**ATTORNEYS FOR PLAINTIFF KYLIA SNIDER**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Holly Williams
Holly B. Williams